IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAY STRAUSS<br>                Plaintiff<br><br>     vs.<br><br>COUNTY OF BERKS;<br>ERIC J. WEAKNECHT, SHERIFF;<br>DEPUTY SHERIFF JACKSON; and<br>DEPUTY SHERIFF RICE<br>                Defendants | CIVIL ACTION NO. 10-3581 |

**MEMORANDUM OPINION**

**Perkin, M.J.**                                                                                                         **May 24, 2011**

          This matter is before the Court on the Motion for Summary Judgment of Defendants Berks County, Berks County Sheriff Eric Weaknecht, Deputy Sheriff Michael Jackson and Deputy Sheriff Ken Rice filed April 11, 2011. Defendants' Berks County, Berks County Sheriff Eric Weaknecht, Deputy Sheriff Michael Jackson and Deputy Sheriff Ken Rice's Memorandum of Law in Support of Their Motion for Summary Judgment; Statement of Undisputed Facts; and Exhibits A-D were filed simultaneously with their motion. Plaintiff's Brief Opposing the Motion for Summary Judgment of Defendants County of Berks, Eric Weaknecht, Sheriff, Deputy Sheriff Jackson, and Deputy Sheriff Rice was filed April 21, 2011. Plaintiff's Reply to Defendants' "Statement of Undisputed Facts" Contra Defendants' Motion for Summary Judgment and Exhibits P1-P6 were filed simultaneously with his brief in opposition. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

I.  Background

Based upon the record papers, exhibits, depositions, and the parties' statements of facts, the pertinent facts to this Court's determination are as follows:

On January 15, 2009, plaintiff Jay Strauss, an inmate housed at Bucks County Prison, was transported by the Berks County Sheriff's Department from Berks County Prison to Bucks County Prison. Mr. Strauss was transported in a Berks County Prison 2006 Ford Econoline transport van[1] operated by defendants Deputy Sheriff Michael Jackson and Deputy Sheriff Kenneth Rice. Both deputies served under the elected Berks County Sheriff, Eric J. Weaknecht. Sheriff Weaknecht was responsible for developing departmental policies for the proper transportation of inmates by the deputy sheriffs under his supervision, and for providing the training necessary to carry out that task properly.

On the day of the transport, the weather was comprised of snow and sleet with outside temperatures well below freezing, at approximately 17 degrees Fahrenheit. Mr. Strauss was wearing a short-sleeved prison jumpsuit with no coat, gloves, or hat. At approximately 8:25 a.m., Mr. Strauss was placed alone in the rear section of the transport van, restrained by handcuffs, shackles, and a belly chain. Although the rear section of the transport van is closed off from the front cabin, there is a small rectangular metal sliding panel that provides access to a plexiglass window for the deputies in the front cabin to observe the prisoners in the rear section of the transport van.

---

[1] Sheriff Weaknecht confirmed that the HVAC system for the rear cabin of the transport van had not been factory installed at the time of his purchase of the transport van for Berks County in April 2006. The rear compartment, including a heating and air conditioning system, was retrofitted by an independent contractor after the original purchase. An invoice from the independent contractor confirms that equipment was removed from a 1998 Ford van and re-installed in the 2006 transport van.

When Mr. Strauss first got into the transport van, he asked the deputies to turn up the heat because it was cold. Deputy Sheriffs Jackson and Rice acknowledged that they were aware that it was not very warm in the back of the transport van. On this particular day, the trip from Berks County Prison to Bucks County Prison was delayed as a result of a snow related accident on Route 422 outside of Reading, Pennsylvania. The total trip took approximately two and one half hours.

During the course of the transport, Mr. Strauss repeatedly called out to Sheriff Deputies Jackson and Rice and banged on the floor and sides of the rear section, requesting that they turn the heat on in the back of the transport van because he was freezing. The deputies advised Mr. Strauss that the heat was "on," and after Mr. Strauss's fourth request, the deputies turned up the radio in the front cabin to avoid hearing his pleas for heat. The deputies never opened the panel in an effort to view Mr. Strauss in the rear section, and because a departmental policy prohibited stops, except in emergencies, they never stopped the transport van to investigate Mr. Strauss's complaints. Throughout the transport, no heat was provided in the rear section for Mr. Strauss.

Upon arrival at the Bucks County Prison, Deputy Sheriffs Jackson and Rice opened the rear doors of the transport van and found Mr. Strauss laying on the floor shivering and unresponsive. Mr. Strauss was placed in a wheelchair, wheeled into the prison, and was administered first aid. According to plaintiff's medical expert, Mr. Strauss suffered frostbite and developed peripheral neuropathy as a result of the incident.

In their incident report, Deputy Sheriffs Jackson and Rice admitted that they did not know how to activate the heat in the rear section of the transport van. More specifically, the incident report provides as follows:

> When leaving the prison we checked if the heater switch, which we had on, did activate the heat. It was found that the switch did not activate the heat. Upon further investigation we were told that you must have the heater and the air conditioning switches on together to activate the heat in the back.

Plaintiff filed claims pursuant to 42 U.S.C. § 1983 against all defendants, asserting that they violated his Eight and Fourteenth Amendment rights, as well as a negligence claim against Berks County.

II.     Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

III. Discussion

    A. Individual Liability

Liability may be imposed against defendants in personal capacity suits even if the violation of the plaintiff's federally protected right was not attributable to the enforcement of a governmental policy or practice. Hafer v. Melo, 502 U.S. 21, 25 (1991). "[T]o establish

5

*personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. (quoting Kentucky v. Graham, 473 U.S. 159 (1985)).

    1.    Deputy Sheriffs Jackson and Rice

        a.    Nature of Claim.

Count I of plaintiff's complaint raises a claim of deliberate indifference against Deputy Sheriffs Jackson and Rice. Initially, we note that defendants contend that Deputy Sheriffs Jackson and Rice were only sued in their official capacity. Based on our reading of the complaint, we disagree.

In order to determine whether plaintiff sued Deputy Sheriffs Jackson and Rice in their personal capacities, we first look to the complaint and the "course of proceedings."[2] Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990) (citing Graham, 473 U.S. at 167 n. 14); see also Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir. 1988). Because plaintiff seeks punitive damages against the individual defendants, which necessarily includes Deputy Sheriffs Jackson and Rice, in section b. of his prayer for relief, this is a strong indicator that the claim of deliberate indifference was asserted against each official in his personal capacity, because municipalities are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (holding that municipalities are immune from punitive damages). By the same token, we note that defendants, in their fifteenth affirmative defense to the complaint, have asserted

---

[2] The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether defendants had actual knowledge of the potential for individual liability. See Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995) (adopting majority view of looking to "substance of the plaintiff's claim, the relief sought, and the course of proceedings to determine the nature of a § 1983 suit when plaintiff fails to allege capacity).

qualified immunity as a defense on behalf of all defendants. Because the defense of qualified immunity is only available against personal capacity claims, it is reasonable to conclude that the individuals defendants, including Deputy Sheriffs Jackson and Rice, received ample notice of the plaintiff's intent to hold them personally liable.

        b.        Deliberate Indifference.

In order to constitute "deliberate indifference," a prison official must be aware of, and disregard, a substantial risk to the inmate safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"). A defendant's subjective knowledge of a risk can be proved indirectly by circumstantial evidence. Such evidence may include a showing that the risk was so obvious or well documented that the official must have known of or been aware of excessive risk to inmate safety. Farmer, 511 U.S. at 842.

Deputy Sheriffs Jackson and Rice confirmed in their incident report that they knew it was "not very warm" in the back of the transport van. It was snowing and sleeting and outside temperatures were well below freezing, at approximately 17 degrees Fahrenheit. Both deputies observed that plaintiff was wearing only a short-sleeved prison jumpsuit, and that he did not have a coat, hat or gloves. Despite these conditions, they admitted that they never checked the rear heating system to be sure that it was operating. Plaintiff further avers that there was an exhaust fan hole on the roof of the vehicle which allowed snow and sleet the enter the rear cabin. This is disputed by defendants.

Moreover, the deputies testified that they clearly heard plaintiff repeatedly requesting heat in the back of the transport van. The deputies admit that hey heard him at least twice, plaintiff contends that he called out on at least four occasions and was banging on the floor and sides of the passenger area in an effort to get the deputies attention because he was freezing. After several requests, the deputies turned up the radio to avoid hearing his pleas. A small rectangular metal sliding panel was available in the transport van that provides access to a plexiglass window which would allow for the deputies to view the rear compartment. Despite this visual access, the Court notes that Deputy Sheriffs Jackson and Rice never once opened the panel during the two and a half hour transport[3] in an effort to check on the condition of plaintiff.

Drawing all inferences in favor of plaintiff, we conclude that the plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to the deputies' deliberate indifference to the excessive risk posed to the plaintiff. More specifically, we reiterate that Deputy Sheriffs Jackson and Rice were aware that it was not very warm in the van and outside temperatures were well below freezing. The deputies were further aware that plaintiff was only wearing a short sleeve prison jumpsuit. Despite several complaints made by plaintiff during the course of the two and a half hour transport, no attempt was made by the deputies to view the plaintiff through the plexiglass window in the transport van. To the contrary, plaintiff alleges the deputies turned up the radio to avoid hearing his pleas. Based on this evidence, we deny summary judgment in favor of plaintiff.

---

[3] The parties dispute the time period in which it took for the transport.

c. Qualified Immunity.

Although qualified immunity was not specifically mentioned by defendants as to Deputy Sheriffs Jackson and Rice in their motion for summary judgment, we recognize that in their fifteenth affirmative defense to the complaint, they have asserted qualified immunity as a defense on behalf of all defendants.[4]

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights known to a reasonable person. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is the defendants' burden to establish that they are entitled to such immunity. See Stoneking v. Bradford Area School District, 882 F.2d 720, 726 (3d Cir. 1989).

Courts apply a two-step inquiry to determine whether a defendant is entitled to qualified immunity. First, a court must determine whether a constitutional right was violated. Second, a court must determine whether the right was clearly established such that a reasonable officer would have known the conduct violated their rights. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009), the Supreme Court found a court may address whether a right was clearly established before addressing whether a constitutional right was violated. "Under the test announced in Harlow, reasonableness is measured by an objective standard; arguments that the defendants desired to

---

[4] As noted *supra* in section III. A. 1. a., defendants asserted that Deputy Sheriffs Jackson and Rice were not sued in their personal capacity. Given this contention by defendants, it appears that they omitted from their motion for summary judgment an argument of qualified immunity on behalf of the deputies. However, because we conclude that the complaint did in fact properly assert a claim of individual liability against the deputies, and because we note that defendants have previously asserted the defense of qualified immunity as to the individually named defendants, we will analyze the defense of qualified immunity as it applies to Deputy Sheriffs Jackson and Rice at this time.

handle or subjectively believed they had handled the incidents properly are irrelevant." Stoneking, 882 F.2d at 726 (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

Because there is a genuine issue of fact as to whether Deputy Sheriffs Jackson and Rice were deliberately indifferent, they have not carried their burden to establish that they are entitled to qualified immunity. See Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) (holding that if plaintiff succeeds in establishing defendants acted with deliberate indifference to plaintiff's constitutional rights, then defendant's conduct was not objectively reasonable and qualified immunity defense is not available). Therefore, we reject the deputies' qualified immunity claim.

### 2. Sheriff Weaknecht

According to the complaint, Sheriff Weaknecht has been sued in both his official and personal capacities. See Complaint at ¶ 10. As discussed *infra* in section III. B. of this Memorandum Opinion, the official capacity claim (Count II) as to Sheriff Weaknecht is dismissed. With respect to the personal capacity claim against him, we note that a defendant is liable under § 1983 only if he personally was involved in the alleged constitutional violation. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997) (abrogate in part on other grounds by Burlington N. and Santa Fe Railway Co. v. White, 548 U.S. 53 (2006)).

A plaintiff can sue a defendant in a personal capacity action under two theories of supervisory liability. See A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586 (3d Cir.2004); accord Hill v. City of Philadelphia, 2008 WL 2622907, at *5 (E.D. Pa. June 30, 2008). A plaintiff can establish supervisory liability if he shows a supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had

10

knowledge of and acquiesced in his subordinates' violations." A.M. v. Luzerne County Juvenile Detention Center, 372 F.3d at 586 (quoting Baker v. Monroe Twp., 50 F.3d 1186, 1190-1191 (3d Cir.1995)); accord Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010). Alternately, as addressed *infra* in section III. B., a plaintiff can establish supervisory liability if he shows the defendants acted "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." Id. (quoting Stoneking, 882 F.2d at 725).

Plaintiff has failed to establish a jury could find Sheriff Weaknecht personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." There are no facts showing that there was contemporaneous knowledge by Sheriff Weaknecht of the offending incident. Accordingly, we grant summary judgment in favor of Sheriff Weaknecht on plaintiff's claim of individually liability.

  B. Municipal Liability - Failure to Train

Count II of plaintiff's complaint raises a failure to train and supervise claim against Sheriff Weaknecht and the County of Berks.

"[T]he standard for personal liability under section 1983 is the same as that for municipal liability." Carter, 181 F.3d at 356. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." Id. If "the policy in question concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate

indifference' to the rights of persons with whom those employees will come into contact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). The "failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." Id. "For example, if the police often violate rights, a need for further training might be obvious." Id. (citing City of Canton, 489 U.S. at 390 n.10; Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) ("[n]ormally, an unreasonable risk in a supervisory liability case will be shown by evidence that such harm has in fact occurred on numerous occasion" and a "supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries")).

The Third Circuit applies a three-part test to determine whether the deliberate indifference requirement has been met:

> it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Id. (citing Walker v. City of New York, 974 F.2d 293, 297-298 (2d Cir. 1992)).

In other words, to state his claim, plaintiff must show that the municipality's "failure to provide specific training . . . has a causal nexus with [the plaintiff's] injuries" and "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)). Plaintiff must also show "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances

under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (quoting Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988)).

Plaintiff has failed to produce any evidence that there was a prior pattern of similar incidents concerning the operation of the transport van's heating system nor has he shown any contemporaneous knowledge by Sheriff Weaknecht of the offending incident. Sheriff Weaknecht testified that this was the first time that an incident such as this had happened.

We conclude that plaintiff's evidence is not sufficient to create a genuine issue of material fact as to whether the policies and practices, created a risk of harm to plaintiff that was "so great and obvious" that Sheriff Weaknecht must have known of the excessive risk but was indifferent to it. The situation in this matter was a novel one and we cannot, therefore, find that Sheriff Weaknecht or Berks exhibited deliberate indifference, namely that a violation of the plaintiffs' federal rights was a "highly predictable" consequence of a failure to equip the deputy sheriffs with specific tools to handle a recurring situation. See Carter, 181 F.3d at 357 (citing Walker, 974 F.2d at 297-298 (to establish liability based on deliberately indifferent failure to train, a plaintiff must show to a moral certainty that employees will confront a given situation, and thus, a policymaker does not exhibit deliberate indifference by failing to train employees for *rare* or *unforeseen events*) (emphasis added)).[5] See also Kelly v. Borough of Carlisle & Rogers, No. 07-1573, 2009 U.S. Dist. LEXIS 37618, at *28 (M.D. Pa. May 4, 2009) (as a practical matter, a municipality cannot be expected to train every officer on every element of every statute

---

[5] See also Hansell v. The City of Atlantic City, 46 Fed. Appx. 665, 667 (3d Cir. 2002) (one case failed to show a pattern or practice of ignoring domestic violence complaints against police officers such that plaintiff was unable to establish a claim under § 1983 for failure to train or supervise).

or law that exists in Pennsylvania because such an undertaking would be ineffective at best, futile at worst, and most importantly, is beyond what is required by law).[6] Consequently, we grant summary judgment in favor of Sheriff Weaknecht and Berks County on Count II of the complaint.

    C.    Fourteenth Amendment

In response to defendants' motion for summary judgment, plaintiff avers that he has not asserted a separate Fourteenth Amendment claim. Rather, he contends that the Fourteenth Amendment is cited in his complaint only because it makes the Eighth Amendment, the violation of which is clearly asserted in this case, applicable to non-federal governmental actors like the defendants in this matter. Accordingly, to the extent the complaint evidences a Fourteenth Amendment substantive due process claim, we grant summary judgment in favor of defendants. See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997) ("if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

---

[6] Liability for failure to train cannot be predicated solely upon a showing that a municipality's employees could have been better trained or that additional training was available which would have reduced the overall risk of constitutional injury. Canty v. City of Philadelphia, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing Colburn, 946 F.2d at 1029-1030). In addition, a §1983 plaintiff pressing a claim of this kind must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur. Colburn, 946 F.2d at 1030.

D. Negligence

Defendants assert that plaintiff's claim of negligence (Count III) must be dismissed because there has been no evidence that the deputies disregarded the rights and safety of the plaintiff. For the reasons expressed *supra* in section III. A. 1. b., we disagree. Drawing all inferences in favor of plaintiff, plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to the deputies' negligence.

IV. Conclusion

We deny defendants' motion for summary judgment as to Counts I and III. Deputy Sheriffs Jackson and Rice are not entitled to qualified immunity. We grant defendants' motion as to Count II.

An appropriate order follows.